LEVI LUBARSKY & FEIGENBAUM LLP
Attorneys for Non-Party Witness Fleet National Bank
845 Third Avenue, 21st Floor
New York, New York 10022
(212) 308-6100
Howard B. Levi (HL-7138)

| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT | Presentment Date: September 10, 2003 |
| EASTERN DISTRICT OF NEW YORK | Hearing Date: September 16, 2003 10 a.m. |

------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| ALLOU DISTRIBUTORS, INC., et al., | : | Case No. 03-82321-511 (MLC) |
| Debtors. | : | Jointly Administered |

------------------------------------------------------------x

OBJECTION OF FLEET NATIONAL BANK TO THE APPLICATION OF THE
CHAPTER 11 TRUSTEE FOR AN ORDER PURSUANT TO RULE 2004 OF THE
FEDERAL RULES OF BANKRUPTCY PROCEDURE COMPELLING FLEET
NATIONAL BANK TO SUBMIT TO AN EXAMINATION AND PRODUCE DOCUMENTS

TO: HONORABLE MELANIE L. CYGANOWSKI
UNITED STATES BANKRUPTCY JUDGE

Fleet National Bank ("Fleet"), by its counsel, Levi Lubarsky & Feigenbaum LLP, for its objection to the application of Kenneth P. Silverman, the Chapter 11 trustee for the above-captioned debtors (the "Trustee"), for an order directing Fleet to produce and surrender documents and to submit to an examination, respectfully sets forth and represents as follows:

The Trustee's Application

1. On August 27, 2003, the Trustee filed more than two dozen applications, by way of notice of presentment, seeking to compel various financial institutions to produce documents and to submit to an examination pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure ("Rule 2004"). The Trustee has filed five of those applications regarding Fleet. The instant application would require Fleet to produce the following documents:

(a) any and all statements, general ledgers, books or records pertaining to Impax Trading, Herman Jacobs, Jacob Jacobs, Victor Jacobs, David Shamilzadeh, Irvin Brown and Ari Jacobs, including, but not limited to, account number 003049939 which the Witness has in its actual or constructive possession, custody or control or otherwise have access to, from January 1, 1996 through the present;

(b) any and all signature cards on file for Impax Trading and any of the individuals in the preceding request from January 1, 1996 through the present;

(c) any and all bank statements, cancelled checks, deposit slips, withdrawal requests, wire transfer authorization, receipts, debit, memos and all other deposit or withdrawals for the above requested accounts from January 1, 1996 through the present; and

(d) any and all financial statements and credit/loan applications, submitted by Impax Trading to the Witness from January 1, 1996 through the present.

Trustee's Application ¶ 12, at 4.

2  In each of its five applications as to Fleet, as well as in its applications as to other financial institutions, the Trustee seeks to justify its demand for the requested documents and examination of a witness by relying on the same boilerplate allegation:

> In this case, the examination of the Witness [here, Fleet] is essential to the Trustee's investigation of the Debtors' financial affairs, since the Trustee's review of documents and information obtained reveals that certain monetary transactions may have been effected by and among Debtors and third parties utilizing account(s) maintained with Witness. The Trustee desires to examine the full nature and extent of the use of the account(s) maintained with Witness and the transactions in those accounts maintained by certain of the Debtors' customers/vendors and/or principals to ascertain whether the estate maintains additional claims for relief arising from the aforesaid transactions. Moreover, the production of the requested documents is similarly essential to the thorough investigation of the financial affairs of the Debtors, the existence of potential claims for relief against third parties and to the proper, effective and efficient administration of the Debtors' estate.

Trustee's Application ¶ 10, at 3.

3. As discussed further below, that supposed justification for the Trustee's document demand is inadequate. The Trustee's demand seeks virtually every scrap of paper that Fleet has ever had in its actual or constructive possession, over a period of nearly eight years, that relate <u>not</u> to the debtors here, but rather to a series of non-debtors consisting of Impax Trading, Herman Jacobs, Jacob Jacobs, Victor Jacobs, David Shamilzadeh, Irvin Brown and Ari Jacobs. Not only are those documents of questionable, if any, relevance to the administration of the debtors' estate, but they would be extraordinarily burdensome to retrieve and produce. Moreover, as to the individuals in question, it is literally impossible for Fleet to comply with the Trustee's demand without additional identifying information regarding the individuals.

### The Trustee's Application Should Be Denied or Modified

4. However broad a Bankruptcy Rule 2004 examination is designed to be, the Trustee's application here strays far beyond what the rule contemplates. Accordingly, absent a substantial reduction in the breadth of the Trustee's document demand, the Trustee's application should be denied.

5. "Bankruptcy Rule 2004 examinations are not boundless." <u>In re Bakalis</u>, 199 B.R. 443, 447 (Bankr. E.D.N.Y. 1996). They are limited by the language of Rule 2004 itself, which states that examinations "may relate only to the acts, conduct or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate." Fed. R. Bankr. P. 2004(b).

6. The language of Rule 2004, as with federal discovery generally, compels that a balance be struck between the competing interests of the parties seeking disclosure and those from whom disclosure is sought. Thus, "Rule 2004 requires that we balance the

3

compelling interests of the parties, weighing the relevance of and necessity of the information sought by examination. That documents meet the requirement of relevance does not alone demonstrate that there is good cause for requiring their production. The burden of showing good cause is an affirmative one in that it is not satisfied merely by a showing that justice would not be impeded by production of the documents." In re Coffee Cupboard, Inc., 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991) (quoting In re Drexel Burnham Lambert Group, Inc., 123 B.R. 702, 712 (Bankr. S.D.N.Y. 1991)).

7. Here, the Trustee's document demand falls far short of meeting the burden of establishing "good cause." First, the Trustee's application is unduly broad. It seeks "all documents" in the possession of a third-party witness (Fleet) that relate to other non-debtors, thereby calling for documents concerning not only the non-debtors' transactions or relationships with the debtors here, but also with potentially many other parties who have nothing at all to do with this bankruptcy. By so doing, the Trustee's application exceeds the limitation in Rule 2004(b) that the documents requested relate "only to the acts, conduct or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate." The Trustee's boilerplate assertion -- that "certain monetary transactions may have been effected by and among Debtors and third parties utilizing account(s) maintained with Witness" -- does not, without more, bring its application within the realm of Rule 2004 or otherwise establish good cause. Indeed, the Trustee does not identify any of those supposed transactions or even give any indication as to how likely any one or more transactions are, in fact, relevant to the administration of the debtors' estate.

8. Under similar circumstances, courts have appropriately rejected such broadly-worded requests for documents. E.g., In re Coffee Cupboard, Inc., 128 B.R. at 516

4

(document request asking for all "legal opinions concerning the Debtor" later restricted to legal opinions concerning the two specific transactions that the trustee was authorized to examine). Here, too, the document request and examination should be similarly limited, and specifically to the non-debtors' account statements at Fleet. Those statements will identify the non-debtors' transactions in the account, enabling the Trustee to determine which of those transactions, if any, are relevant to the debtors' estate and which are not. To the extent necessary, the Trustee can then make a supplemental -- and much more focused -- application under Rule 2004 for documents relating to the relevant transactions.

9. Second, and perhaps most important, the Trustee's application lacks sufficient specific information that would enable Fleet to identify in the first place the entity and the individuals referred to in the application. Such identifying information includes last known addresses and taxpayer identifications or social security numbers. Without that information, Fleet cannot determine who among hundreds of account holders the Trustee has in mind. For example, Fleet's search of its database for certain of the names revealed hundreds of different account holders, of which Fleet can only guess who the relevant one is. For several of the individuals in question, then, Fleet could not currently comply with the Trustee's demand whether it wanted to or not.

10. Third, the Trustee's demand covers far too long a time period, seeking documents that date back all the way to January 1, 1996. The Trustee gives no specific reasons as to why it needs documents spanning an almost eight-year period, and its boilerplate justification for its application is no substitute for them. Absent specific evidence of why such a lengthy time period is appropriate, the Trustee's application should at the very least be modified to cover a significantly shorter period of time -- for example, the two years before the filing of

the Debtors' petitions.

Finally, as the Trustee recognizes, compliance with any subpoena issued to Fleet pursuant to the Trustee's application "will require substantial additional time to be responsive . because of [Fleet's] internal subpoena compliance procedures." Trustee's Application ¶ 11, at 4. Assuming it proceeds with all deliberate speed, Fleet will still need an extended period of time to comply with any subpoena issued pursuant to the Trustee's application. Accordingly, Fleet respectfully requests that any order authorizing the Trustee to serve a subpoena on Fleet require that Fleet be given at least 45 days' notice of the date on which it is required to produce the documents in question

## Conclusion

12. For the foregoing reasons, Fleet respectfully requests that the Trustee's application be denied, with leave to serve a more limited application. In the alternative, Fleet requests that the application be modified to limit the scope of the document request and examination in the ways described above, and that any order authorizing the Trustee to issue a subpoena require that the subpoena give Fleet at least 45 days' notice of the date on which it is required to produce the documents in question.

Dated: New York, New York
       September 5, 2003

LEVI LUBARSKY & FEIGENBAUM LLP

By:   s/Howard B. Levi
      Howard B. Levi (HL-7138)

845 Third Avenue, 21st Floor
New York, New York 10022
(212) 308-6100

Attorneys for Fleet National Bank